Robert Chalfant (State Bar No. 203051)
**LAW OFFICE OF ROBERT CHALFANT**
5701 Lonetree Blvd., Suite 312
Rocklin, California 95765
Telephone:    (916) 647-7728
Facsimile:    (916) 930-6093
Email:        robert@rchalfant.com

        Attorney for Plaintiff
        JANE DOE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br><br>        v.<br><br>STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR). OFFICER GREG RODRIGUEZ, ACTING WARDEN MICHAEL PALLARES, OFFICER FAVRE, OFFICER ALLEN, OFFICER VALLADARES, OFFICER MOSQUEDA, and DOES 1 to 20,<br><br>                    Defendants. | Case No.<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

For most inmates at Central California Women's Facility ("CCWF"), a visit to the hearing office of the Board of Parole Hearings ("BPH") is one that offers hope, optimism and the chance for a new beginning. For JANE DOE, and other female inmates summoned to BPH by OFFICER GREG RODRIGUEZ ("RODRIGUEZ"), it meant they were going to be sexually assaulted and/or raped by an on-duty correctional officer in a location with no video monitoring.

This action arises from the repeated sexual assault and rape of JANE DOE, a former inmate, by RODRIGUEZ, a correctional officer employed by the State of California at CCWF, in Chowchilla, California.

The STATE OF CALIFORNIA, the CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"), ACTING WARDEN MICHAEL PALLARES, and RODRIGUEZ's supervisors and co-workers had prior notice that RODRIGUEZ was engaging in sexual misconduct with female inmates, but failed to take any action to prevent JANE DOE and other female inmates from being victimized by his predatory conduct.

## JURISDICTION & VENUE

1. This Court has original jurisdiction of the federal claims under 28 U.S.C.§ 1331 (in that they arise under the United States Constitution) and § 1343(a)(3) (in that the action is brought to address deprivations, under color of authority, of rights, privileges, and immunities secured by the United States Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because the acts and/or omissions stated herein occurred in the Eastern District of California.

3. Intra-district venue is proper in the Fresno Division of the Eastern District of California pursuant to E.D. Cal. L.R. 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Madera.

## EXHAUSTION

4. JANE DOE submitted a timely Government Claim to the STATE OF CALIFORNIA regarding the claims alleged in this action on October 3, 2022. The claim was rejected by operation of law on November 17, 2022, as the STATE OF CALIFORNIA never issued a written rejection of JANE DOE's claim.

## PARTIES

5. Plaintiff JANE DOE is a resident of the State of California. Plaintiff JANE DOE

proceeds by a fictitious pseudonym, in place of her true and correct name.

6.     Defendant STATE OF CALIFORNIA, is, and at all times material herein employed all individual Defendants in this action, and all individual Defendants acted within the course and scope of their employment. Defendant STATE OF CALIFORNIA is properly named as a Defendant for Plaintiff's claims under Civil Code Section 52.1 (the Bane Act).

7.     Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") is and was an agency of the State of California.

8.     Defendant ACTING WARDEN MICHAEL PALLARES is, and at all times material herein was, the Acting Warden of Central California Women's Facility ("CCWF"), located in Chowchilla, California. ACTING WARDEN MICHAEL PALLARES was acting within the course and scope of his employment and under color of state law at all relevant times. ACTING WARDEN MICHAEL PALLARES is sued in his individual capacity.

9.     OFFICER GREG RODRIGUEZ is, and at all times material herein was, a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. Defendant OFFICER GREG RODRIGUEZ is sued in his individual capacity.

10.     OFFICER ALLEN is, and at all times material herein was, a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. Defendant OFFICER ALLEN is sued in his individual capacity.

11.     OFFICER FAVRE is, and at all times material herein was, a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. Defendant OFFICER FAVRE is sued in his individual capacity.

12.     OFFICER MOSQUEDA is, and at all times material herein was, a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. Defendant OFFICER MOSQUEDA is sued in his individual capacity.

13.     OFFICER VALLADARES is, and at all times material herein was, a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. Defendant OFFICER VALLADARES is sued in his individual capacity.

14.     Defendants DOES 1 to 20 are and/or were agents or employees of the State of California, acting within the course and scope of their employment and under color of state law. Defendants DOES 1 to 20 true and correct names and identities are not currently known. Defendants DOES 1 to 20 are sued by their fictitious names and true and correct names and identities will be submitted when ascertained.

**GENERAL ALLEGATIONS**

15.     At all times relevant herein, all wrongful and unlawful acts described herein were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

16.     In 2006, the California Department of Corrections and Rehabilitation ("CDCR"), adopted a Prison Rape Elimination Act Policy ("PREA"), which declares that CDCR has "zero tolerance for sexual violence, staff sexual misconduct and sexual harassment in its institutions," and that all "sexual violence, staff sexual misconduct, and sexual harassment is strictly prohibited." See Department of Corrections and Rehabilitation Operations Manual, Article 44, Section 54040.1 "Policy".

17.     CDCR's PREA definitions provide that the "legal concept of 'consent' does not exist between staff and offenders; any sexual behavior between them constitutes sexual misconduct and shall subject the staff member to disciplinary action and/or to prosecution under the law." See Section 54040.3, "Definitions".

18.     Under CDCR's PREA policy, all Correctional Officers at CCWF are required to report "immediately and confidentially to the appropriate supervisor any information that indicates an offender is being, or has been the victim of sexual violence, staff sexual misconduct, or sexual harassment." See Section 54040.7.

19.     State law also requires employees to report correctional staff misconduct.

4

California Code of Regulations, Title 15, Section 3401.5(c) requires any employee who observes or receives "any incident, information or facts which would lead a reasonable person to believe sexual misconduct has occurred" to "immediately report the information or incident." Failure to do so can subject an employee to disciplinary action. Id.

20.     In 2005, the California legislature also enacted the Sexual Abuse in Detention Act ("SADEA") ( See Penal Code Sections 2635-2643). California Penal Code Section 2636, subsection (b), requires that CDCR "ensure that staff members intervene when an inmate or ward appears to be the target of sexual harassment or intimidation."

21.     On or about March 9, 2022, JANE DOE arrived at CCWF to complete a prison sentence after pleading no contest to a felony charge in Sacramento, California. This was JANE DOE's first prison commitment, and she was 30 years old.

22.     While going through A Yard work exchange to get an inmate movement slip ("Ducat"), at 805, JANE DOE encountered RODRIGUEZ, who was assigned to A Yard work exchange and Board of Parole Hearings ("BPH").

23.     Immediately after meeting JANE DOE, RODRIGUEZ asked her to pull down her CCWF issued N-95 mask so that he could see her face.

24.     RODRIGUEZ immediately began making sexually inappropriate and harassing comments, telling JANE DOE that he loved her lips and eyes, and telling her that she was beautiful.

25.     RODRIGUEZ would engage in this sexually harassing and inappropriate behavior with JANE DOE, and other female inmates, whenever they went through A Yard work exchange, and he was present.

26.     RODRIGUEZ's sexually harassing and inappropriate behavior was witnessed by other correctional officers and inmates during his assignment to A Yard work exchange.

27.     Female inmates had complained to correctional staff about this sexually harassing and inappropriate behavior by RODRIGUEZ prior to May of 2022, but no action was taken by RODRIGUEZ's supervisors or ACTING WARDEN MICHAEL PALLARES.

28.     RODRIGUEZ's reputation as a sexual harasser and predator is well known among

5

the female inmates at CCWF and supervisors and correctional staff knew and/or should have known that RODRIGUEZ was a sexual predator and that he had a pattern and practice of summoning female inmates to locations at CCWF that had no video monitoring and no legitimate reason for doing so.

29.     On May 15, 2022, Housing Staff at CCWF called out over the loudspeaker "JANE DOE, going to BPH."  This meant that JANE DOE was being summoned up to the Board of Parole Hearings offices located in Main Yard.

30.     JANE DOE did not have a parole hearing and had no idea why she was being summoned to BPH.

31.     The BPH offices are in a secure building that requires Correctional Officer approval for entry and the opening of secured and locked doors by correctional staff.

32.     The BPH offices are comprised of several small offices and one large Hearing Room ("Hearing Room") where Board of Parole Hearing Commissioners, appointed by the Governor, conduct parole suitability hearings. These parole hearings can reduce or eliminate the time that an inmate must spend in custody.

33.     A hallway is used to access the various offices and the BPH Hearing Room.

34.     The offices and hallways at BPH all have constant video surveillance, and a live video feed of these locations is continuously monitored by Correctional Staff that are stationed adjacent to BPH. This video is recorded so that it can be reviewed by ACTING WARDEN MICHAEL PALLARES and other supervisory staff.

35.     No video cameras, live video monitoring or recording exists inside the BPH Hearing Room where the Board of Parole Hearings conducts its parole suitability hearings.

36.     The BPH Hearing Room is occasionally used for attorney video visits. However, JANE DOE did not have an attorney video visit scheduled for May 15, 2022, or at any other time while housed at CCWF.

37.     JANE DOE would eventually learn that it was RODRIGUEZ who had summoned her to BPH on May 15, 2022.

38.     OFFICER ALLEN ("ALLEN"), walked JANE DOE to the BPH offices, handed

1    her over to RODRIGUEZ, and then left and returned to A Yard. JANE DOE had no choice but to

2    go to BPH with ALLEN as she was required to follow correctional officer's orders.

3       39. ALLEN conducted no inquiry into why RODRIGUEZ summoned JANE DOE to

4    BPH on May 15, 2022. If ALLEN had conducted even a minimal inquiry, he would have learned

5    that she did not have a parole hearing, did not have an attorney video visit scheduled, or any other

6    official CCWF business at BPH on that date.

7       40. RODRIGUEZ escorted JANE DOE into the BPH Hearing Room and informed

8    JANE DOE that there were no cameras in the Hearing Room.

9       41. There were cameras outside of the BPH Hearing Room, and these cameras had

10   unobstructed views of the hallway outside of the Hearing Room.

11      42. These live video feeds showed RODRIGUEZ escorting JANE DOE into the

12   Hearing Room and closing the door.

13      43. These live video feeds were being monitored by correctional officers, including

14   ALLEN, on May 15, 2022, who had returned to Housing after escorting JANE DOE to BPH.

15      44. After RODRIGUEZ closed the door to the Hearing Room, he forcefully grabbed

16   JANE DOE and began kissing her, touching her breasts and buttocks and trying to pull down her

17   pants. JANE DOE repeatedly told RODRIGUEZ to "Stop!".

18      45. JANE DOE had no romantic interest in RODRIGUEZ whatsoever and did not

19   consent to being kissed, touched, groped and molested by RODRIGUEZ. JANE DOE repeatedly

20   told him "no."

21      46. RODRIGUEZ would not take "no" for an answer. RODRIGUEZ kept JANE DOE

22   in the parole hearing room against her will and did not permit her to leave.

23      47. RODRIGUEZ told JANE DOE that he wanted "a blowjob" (oral sex), and to have

24   sexual intercourse and threatened that he would fabricate false Rules Violation Reports ("115's"),

25   if she refused. RODRIGUEZ used the threat of false disciplinary violations to intimidate and

26   coerce JANE DOE and others to engage in nonconsensual sex acts on multiple occasions.

27      48. As this was JANE DOE's first prison commitment at CCWF, JANE DOE had a

28   short commitment period. RODRIGUEZ was aware, after reviewing JANE DOE's custody file

("C-file"), that a release date had already been set for her to be released from CDCR custody.

49.    RODRIGUEZ informed JANE DOE that these violations would increase her period of commitment in CDCR, suspend any privileges she was entitled to, and would result in a transfer to solitary confinement at the Special Housing Unit ("SHU").

50.    RODRIGUEZ grabbed JANE DOE and forced JANE DOE down to her knees to perform oral sex then he grabbed her and forced her to bend over a chair, pulled down her prison issued pants and underwear and raped her. RODRIGUEZ did not use a condom and ejaculated inside of JANE DOE.

51.    RODRIGUEZ instructed JANE DOE not to tell anyone and informed her that no one would believe her if she did as she was an inmate making allegations against a guard that had worked at CDCR for approximately twenty years.

52.    RODRIGUEZ threatened JANE DOE that if she did report him, he would file 115's and she would have her release date extended.

53.    After completing the sexual assault and rape, RODRIGUEZ instructed JANE DOE that when she returned to 503 to check-in, she must inform officers that she had an attorney video visit at BPH.

54.    JANE DOE was devastated and in shock and disbelief after being sexually assaulted and raped by RODRIGUEZ in the Hearing Room. She was afraid and felt hopeless and powerless to prevent future sexual assaults. She was humiliated, embarrassed and terrified that a law enforcement officer would rape her in prison. She was also aware that no correctional officers came to stop RODRIGUEZ, even though she knew officers had seen RODRIGUEZ taking her into the Hearing Room on the live video feed.

55.    JANE DOE returned to 503 where she was questioned by OFFICER FAVRE ("FAVRE"), about where she had been.

56.    JANE DOE did as ordered by RODRIGUEZ and informed FAVRE, ALLEN and OFFICER VALLADARES ("VALLADARES"), that she had been at BPH for an attorney video visit.

57.    FAVRE looked very surprised at her response. FAVRE, ALLEN and

8

1    VALLADARES did not and could not have seen an attorney video visit scheduled, as JANE

2    DOE never had an attorney video visit while at CCWF.

3         58.    Attorney video visits are arranged through the "Litigation Coordinator" at CCWF

4    and are only approved once CDCR authorization forms have been completed by the attorney, the

5    attorney is granted authorization and the video visit is placed on calendar by the Litigation

6    Coordinator.

7         59.    FAVRE, ALLEN and VALLADARES then entered an adjacent office, closed the

8    door, and discussed JANE DOE's trip to BPH and meeting with RODRIGUEZ.

9         60.    FAVRE, ALLEN and VALLADARES did not report to supervisors that

10   RODRIGUEZ had taken JANE DOE into the unmonitored Hearing Room and closed the door,

11   even though they had seen that occur on the live video feed.

12        61.    FAVRE, ALLEN and VALLADARES also did not report to supervisors that

13   JANE DOE falsely reported having an attorney video visit and was instead alone with

14   RODRIGUEZ in an unmonitored location for an extended period of time.

15        62.    If FAVRE, ALLEN and VALLADARES had complied with the CDCR PREA

16   policy requiring reporting, they could have prevented the subsequent sexual harassment, sexual

17   assaults and rapes of JANE DOE and other female inmates at CCWF.

18        63.    Even though CDCR Policy states that there is a zero-tolerance policy towards

19   sexual assault and rape in California prisons, and CDCR policy and state law requires correctional

20   officers to report any information or facts "which would lead a reasonable person to believe that

21   sexual misconduct has occurred" FAVRE, ALLEN and VALLADARES took no further action.

22        64.    FAVRE, ALLEN and VALLADARES also did not report that JANE DOE stated

23   that she had had an "attorney video visit" even though they knew and were aware that no attorney

24   video visit had been scheduled that day by the CDCR Litigation Coordinator.

25        65.    JANE DOE was sexually assaulted and raped again by RODRIGUEZ on May 20,

26   2022.

27        66.    RODRIGUEZ followed the exact same plan that he had used before.

28   RODRIGUEZ ordered that JANE DOE go to BPH. Housing staff called over the loud-speaker,

"JANE DOE, going to BPH," and she then proceeded to go to housing, picked up her ducat, and then proceeded to BPH as required by the officer's orders.

67.     OFFICER MOSQUEDA ("MOSQUEDA"), who issued the ducat, and other Correctional Staff present that day failed to conduct any inquiry or investigate why JANE DOE was going to BPH.

68.     MOSQUEDA did not investigate or report to his supervisors that RODRIGUEZ had taken JANE DOE into the Hearing Room at BPH and closed the door, even though he and other correctional officers had observed that occur on the live video feed.

69.     If MOSQUEDA had conducted a simple inquiry, he would have discovered that JANE DOE had no legitimate reason to be at that location.

70.     JANE DOE returned to Housing, and informed MOSQUEDA that she had an attorney video visit as ordered by RODRIGUEZ.

71.     A phone call to the Litigation Coordinator would have shown that no attorney video visit was scheduled for May 20, 2022, or at any other time for JANE DOE while at CCWF.

72.     RODRIGUEZ continued to sexually harass, sexually assault and rape JANE DOE until her eventual release from CCWF in August of 2022.

73.     RODRIGUEZ would either call for her to be transported to BPH by housing staff or call her directly on the phone at the Watch Office where she was employed. If JANE DOE answered the phone in the Watch Office, which was one of her job duties, RODRIGUEZ would order her to "bring a supply list" or to "bring a porter."

74.     Once she arrived at the BPH office, RODRIGUEZ would take her into the Hearing Room, close the door and sexually assault and/or rape her. RODRIGUEZ would also threaten to file false disciplinary charges to increase her commitment period if she refused.

75.     Video exists of JANE DOE in the hallway outside of the BPH Hearing Room, and that the video shows JANE DOE being taken into the BPH Hearing Room by RODRIGUEZ on multiple occasions.

76.     Video exists of other female inmates in the hallway outside of the BPH Hearing Room, and those video show other female inmates being taken into the BPH Hearing Room by

RODRIGUEZ for extended periods of time.

77.     RODRIGUEZ used the BPH Hearing Room to sexually assault and/or rape multiple victims. The exact number of victims is unknown at this time.

78.     RODRIGUEZ frequently requested overtime at BPH to commit these rapes and sexual assaults. RODRIGUEZ's requests for overtime at BPH were granted, even though prior complaints of sexual misconduct against RODRIGUEZ had been alleged by female inmates in the BPH offices and Hearing Room at CCWF.

79.     Female inmates at CCWF had complained to Supervisors and Correctional Officers that RODRIGUEZ was engaging in sexual harassment, sexual assault, and rape, prior to JANE DOE being raped by RODRIGUEZ on May 15, 2022.

80.     ACTING WARDEN MICHAEL PALLARES, supervisory staff and other correctional officers knew and were aware that female inmates had complained of sexual harassment, sexual assault and rape by RODRIGUEZ at A Yard Work Exchange, the BPH offices and BPH Hearing Room and failed to remove RODRIGUEZ from the BPH assignment or install a video monitoring system in the Hearing Room to monitor that location.

81.     Even though ACTING WARDEN MICHAEL PALLARES, supervisory staff and other correctional officers were aware of these allegations, they failed to review the hours of video footage in their possession of different female inmates entering the BPH Hearing Room with RODRIGUEZ, terminate RODRIGUEZ's access to the BPH area, install video cameras, or investigate other available evidence to corroborate the female inmates allegations.

82.     Videos in the possession of CDCR show RODRIGUEZ taking numerous female inmates into an area without video monitoring (the Hearing Room) and closing the door.

83.     CDCR and its employees failed to conduct any inquiry into why RODRIGUEZ was frequently alone with female inmates in this unmonitored location.

84.     JANE DOE asked to be seen by medical staff after being raped and sexually assaulted so that she could be tested for STD's and take a pregnancy test. Medical records in the possession of CDCR will confirm that she went to medical and will confirm that she was requesting STD and pregnancy tests.

85.   CDCR refused to provide an STD test or pregnancy test to JANE DOE unless she was willing to admit that she engaged in "risky behavior". CDCR medical staff had informed her that if she admitted to engaging in "risky behavior" that she could face discipline for violating the facility's rules, and her period of incarceration could be increased.

86.   Correctional Officers that commit sexual assaults against inmates know the current system protects them from being discovered as inmates are afraid to come forward for fear of discipline if they report "risky behavior."

87.   RODRIGUEZ raped JANE DOE four additional times between July and August.

88.   RODRIGUEZ attempted to sodomize JANE DOE on multiple occasions while raping her.

89.   RODRIGUEZ sexually assaulted JANE DOE on approximately five to ten other occasions but did not force her to engage in oral sex or sexual intercourse during those assaults. These assaults also included kissing and sucking her breasts and forcing her to French kiss him.

90.   The sexual assaults and rapes all occurred in the unmonitored BPH Hearing Office.

91.   ACTING WARDEN MICHAEL PALLARES was aware that complaints alleging PREA policy violations had been received by CDCR and that these complaints indicated that RODRIGUEZ was sexually harassing and sexually assaulting inmates.

92.   ACTING WARDEN MICHAEL PALLARES took no action on these complaints by female inmates and allowed RODRIGUEZ to continue his unmonitored use of the BPH offices and allowed RODRIGUEZ the ability to use the BPH hearing office to accrue overtime pay.

93.   JANE DOE should not have even been at CCWF as she was classified at Level 2 and endorsed for a transfer to Folsom State Prison which is near her home and family in Northern California.

94.   On May 18, 2022, after the first sexual assault and rape, JANE DOE was transfer re-endorsed to CCWF and housed in D Yard, the most violent and restrictive housing area at Chowchilla.

95.   When JANE DOE was being escorted to D Yard by the escorting Officer, Officer

12

1    D. Davis, commented "Good luck, you are going to need it."

2         96.    Plaintiff is informed and believes that Officer Davis is currently on paid

3    administrative leave for sexual misconduct with female inmates at CCWF.

4         97.    JANE DOE's transfer to D Yard was against CDCR's own rules and policies as

5    her classification Level of 2 mandated that she be housed in a lower security level yard at CCWF.

6         98.    It is believed that RODRIGUEZ played a role in keeping JANE DOE at CCWF

7    and placing her in D Yard so that he could continue to use her for his own sexual gratification.

8         99.    RODRIGUEZ had previously asked JANE DOE "What can I do to keep you

9    here?"

10        100.   RODRIGUEZ had previously threatened to write JANE DOE up by filing a false

11   115 violation for the purpose of keeping her incarcerated at CCWF.

12        101.   For unknown reasons, the Warden at CCWF paroled JANE DOE prior to her

13   release date.

14        102.   After JANE DOE's release from CCWF on August 19, 2022, the Warden

15   personally attempted to interview JANE DOE's former cellmate about RODRIGUEZ's sexual

16   misconduct, even though JANE DOE had not filed a grievance or complaint against

17   RODRIGUEZ, as she was afraid of retaliation while in custody.

18        103.   RODRIGUEZ is currently under investigation for sexually assaulting and raping

19   multiple female inmates at CCWF.

20        104.   RODRIGUEZ was placed on paid administrative leave because of the

21   investigation and has since "retired."

22        105.   JANE DOE has suffered severe and extreme mental and emotional distress as a

23   result of RODRIGUEZ's actions and the failure of CDCR, ACTING WARDEN MICHAEL

24   PALLARES and others correctional officers to protect her from a serial rapist employed by

25   CDCR.

26        106.   JANE DOE will continue to suffer mental and emotional distress, anguish,

27   embarrassment, and humiliation for the rest of her life.

28                           **VI. CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**"Cruel and Unusual Punishment/Excessive Force"**

**(42 U.S.C. § 1983)**

*Against Defendant RODRIGUEZ and DOES 1 to 20*

107.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 106, as though fully set forth herein.

108.    Defendant RODRIGUEZ deprived JANE DOE of her rights under the Eighth Amendment to the U.S. Constitution, when he sexually harassed, sexually assaulted and raped JANE DOE on multiple occasions while she was serving a prison sentence at CCWF.

109.    RODRIGUEZ used and abused his position of authority as a correctional officer employed at CCWF to control JANE DOE's movements within CCWF and at all times acted under color of law and without any penological justification.

110.    RODRIGUEZ touched JANE DOE in a sexual manner on multiple occasions and engaged in sexual conduct for his own sexual gratification. RODRIGUEZ performed these acts for the purpose of humiliating, degrading and demeaning JANE DOE.

111.    As a direct and proximate result of said acts by Defendant RODRIGUEZ, JANE DOE suffered injuries and damages as alleged herein and to which JANE DOE is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, and past and future mental and emotional distress, costs and attorneys' fees.

112.    Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant RODRIGUEZ according to proof.

**SECOND CLAIM FOR RELIEF**

**"Right to Bodily Integrity"**

**(42 U.S.C. § 1983)**

*Against RODRIGUEZ and DOES 1 to 20*

113.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 112, as though fully set forth herein.

14

114.    Defendant RODRIGUEZ deprived JANE DOE of her rights under the Fourteenth Amendment to the U.S. Constitution, when he sexually harassed, sexually assaulted and raped JANE DOE on multiple occasions while serving a prison sentence at CCWF.

115.    RODRIGUEZ used and abused his position of authority as a correctional officer employed at CCWF to control JANE DOE's movements within CCWF and at all times acted under color of law and without any penological justification.

116.    RODRIGUEZ touched JANE DOE in a sexual manner on multiple occasions and engaged in sexual conduct for his own sexual gratification. RODRIGUEZ performed these acts for the purpose of humiliating, degrading and demeaning JANE DOE.

117.    As a direct and proximate result of said acts by Defendant RODRIGUEZ, JANE DOE suffered injuries and damages as alleged herein and to which JANE DOE is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, and past and future mental and emotional distress, costs and attorneys' fees.

118.    Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant RODRIGUEZ according to proof.

**THIRD CLAIM FOR RELIEF**

**"Failure to Protect"**

**(42 U.S.C. § 1983)**

*Against ACTING WARDEN MICHAEL PALLARES, FAVRE, ALLEN, VALLADARES,*

*MOSQUEDA and DOES 1 to 20*

119.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 118, as though fully set forth herein.

120.    The aforementioned acts and/or omission of ACTING WARDEN MICHAEL PALLARES, and DOES 1 to 20 in failing to properly investigate prior claims of sexual harassment, sexual assault and rapes committed against female inmates by RODRIGUEZ were done with clear disregard for JANE DOE's rights under the Eighth Amendment.

121.    ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 made intentional

15

decisions with respect to RODRIGUEZ that allowed him to use and have unmonitored access to female inmates at the BPH offices and Hearing Room, even allowing RODRIGUEZ to use this location to obtain overtime pay and benefits.

122.   ACTING WARDEN MICHAEL PALLARES and other supervisory and correctional officers employed at CCWF failed to install video monitoring in the BPH Hearing Room, even though they knew and were aware that RODRIGUEZ was using this location to sexually assault and rape female inmates.

123.   FAVRE, ALLEN, VALLADARES, MOSQUEDA observed and received information that that would lead any reasonable person to believe sexual misconduct occurred and they failed to report this information as required. These decisions and conditions put JANE DOE at substantial risk of suffering serious harm and she in fact suffered serious harm.

124.   Defendant ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 did not take reasonable available measures to abate the risk, even though a reasonable individual in the circumstances would have appreciated the high degree of risk involved in light of the obvious consequences.

125.   By not taking such measures, Defendant ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 caused JANE DOE's injuries.

126.   As a direct and proximate result of said acts and/or omissions by Defendants ACTING WARDEN MICHAEL PALLARES,  FAVRE, ALLEN, VALLADARES, MOSQUEDA and DOES 1 to 20, JANE DOE suffered injuries and damages as alleged herein and to which JANE DOE is entitled to recover damages for past and future medical care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

127.   The aforementioned acts and/or omissions of said Defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of JANE DOE, thereby entitling plaintiff to an award of exemplary and punitive damages according to proof.

## **THIRD CLAIM FOR RELIEF**

### **"Supervisory Liability"**

16

**(42 U.S.C. § 1983)**

*AGAINST ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20*

128.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 127, as though fully set forth herein.

129.    Supervisory Defendants ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 were acting under color of state law during all times relevant to this action.

130.    By incarcerating JANE DOE and other female inmates and assuming control over JANE DOE, ACTING WARDEN MICHAEL PALLARES and the Supervisory Defendants created a special relationship that required Defendants to assume affirmative duties of care and protection.

131.    ACTING WARDEN MICHAEL PALLARES and the Supervisory Defendants DOES 1 to 20 recklessly and with conscious disregard to known and obvious risks to JANE DOE's safety, failed to protect JANE DOE and other female inmates from pervasive sexual assaults and rapes by RODRIGUEZ in the following ways:

    a.    by continuing to employ RODRIGUEZ and other prison personnel in positions that allowed unsupervised and unmonitored access to female inmates even though ACTING WARDEN MICHAEL PALLARES and other supervisory defendants had knowledge that RODRIGUEZ and other correctional officers were committing sexual harassment, sexual assault and rape of female inmates;

    b.    by failing to take any precautionary measures to address the known and ongoing problem of sexual abuse and misconduct by correctional officers at CCWF;

    c.    by failing to install and maintain a video surveillance system in each and every location where female inmates are present and that correctional officers have access to;

    d.    by failing to review and have their subordinates review live video feeds of locations through CCWF that have video surveillance to monitor whether RODRIGUEZ or other correctional officers are taking female inmates into unmonitored locations;

    e.    by failing to investigate and terminate RODRIGUEZ prior to May 15, 2022, even though female inmates had submitted complaints against RODRIGUEZ alleging

1  sexual misconduct committed by RODRIGUEZ at CCWF;

2        f.    by allowing RODRIGUEZ to be assigned to BPH at CCWF even though

3  female inmates had complained of sexual misconduct and sexual assaults at BPH, and ACTING

4  WARDEN MICHAEL PALLARES and other supervisory defendants knew that BPH allowed

5  RODRIGUEZ to have unmonitored access to female inmates at CCWF;

6        g.    by approving RODRIGUEZ's requests for overtime at the BPH office,

7  even though they had received prior complaints from female inmates that RODRIGUEZ was

8  using the unmonitored BPH to sexually assault and rape female inmates; and,

9        h.    by failing to properly train, assign, supervise and guide correctional staff to

10  ensure the safety of female inmates at CCWF and to protect them from sexual assault by

11  correctional officers.

12      132.   This conduct amounts to deliberate indifference to the rights of JANE DOE and

13  other female inmates and shocks the conscience.

14      133.   ACTING WARDEN MICHAEL PALLARES and the supervisory defendants

15  knew that RODRIGUEZ and other correctional officers were engaging in these acts and knew the

16  conduct would deprive JANE DOE and others of their rights.

17      134.   As a direct and proximate result of said acts and/or omissions by Defendants

18  ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20, JANE DOE suffered injuries

19  and damages as alleged herein and to which JANE DOE is entitled to recover damages for past

20  and future medical care, past and future pain and suffering, past and future mental and emotional

21  distress, costs and attorneys' fees.

22      135.   The aforementioned acts and/or omissions of said Defendants were willful,

23  wanton, malicious and done with conscious or reckless disregard for the rights and safety of

24  JANE DOE, thereby entitling plaintiff to an award of exemplary and punitive damages according

25  to proof.

26  **FOURTH CLAIM FOR RELIEF**

27  **"California Gender Violence Law"**

28  **(Cal. Civ. Code § 52.4)**

*Against RODRIGUEZ and DOES 1 to 20*

136.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 135, as though fully set forth herein.

137.    The actions of RODRIGUEZ, in sexually harassing, sexually assaulting, raping and attempting to sodomize JANE DOE constitute "gender violence" and sex discrimination under Civil Code § 52.4, as those acts constitute criminal offenses under state law and involved physical invasions of a sexual nature under coercive conditions, whether or not RODRIGUEZ is ever charged for his criminal conduct.

138.    RODRIGUEZ touched JANE DOE in a sexual manner on multiple occasions and engaged in sexual conduct for his own sexual gratification. RODRIGUEZ performed these acts for the purpose of humiliating, degrading and demeaning JANE DOE.

139.    As a direct and proximate result of said acts by Defendant RODRIGUEZ and DOES 1 to 20, JANE DOE suffered injuries and damages as alleged herein and to which JANE DOE is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, and past and future mental and emotional distress, costs and attorneys' fees.

140.    Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant RODRIGUEZ according to proof.

**FIFTH CLAIM FOR RELIEF**

**"Tom Bane Civil Rights Act"**

**(California Civil Code § 52.1)**

*Against RODRIGUEZ, STATE OF CALIFORNIA, CDCR and DOES 1 to 20*

141.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 140, as though fully set forth herein.

142.    Defendant RODRIGUEZ sexually harassed, sexually assaulted and battered Plaintiff JANE DOE on multiple occasions, through the use of threats, intimidation and coercion, and with deliberate indifference or reckless disregard of rights protected by the Eighth and

Fourteenth Amendments to the U.S. Constitution, as well as California Constitution, Article I, § 17 and California Civil Code § 52.4.

143.    Defendant DOES 1 to 20 failed to intercede in Defendant RODRIGUEZ's sexual harassment, sexual assaults and rapes of Plaintiff JANE DOE, with deliberate indifference or reckless disregard of rights protected by the Eighth and Fourteenth Amendments to the U.S. Constitution as well as California Constitution Article I, § 17 and California Civil Code § 52.4.

144.    Defendants STATE OF CALIFORNIA and CDCR failed to train its custodial officers in the recognition and prevention of staff sexual misconduct as required by Department of Corrections and Rehabilitation Operations Manual, Article 44, Section 54040.7 "Detection, Notification and Reporting," California Code of Regulations, Title 15, Section 3401.5(c), and the Sexual Abuse in Detention Act ("SADEA") ( See Penal Code Sections 2635-2643).

145.    Defendants STATE OF CALIFORNIA and CDCR have policies, customs and practices that permit employees with prior complaints of staff sexual misconduct to summon female inmates to areas within CCWF that have no video monitoring, even though there was a known and obvious risk of female inmates having their constitutional and statutory rights violated.

146.    Defendants STATE OF CALIFORNIA and CDCR have failed and refused to provide video monitoring in locations where male employees have access to female inmates, even though there was a known and obvious risk of female inmates having their constitutional and statutory rights violated.

147.    Defendants STATE OF CALIFORNIA and CDCR, acting or purporting to act under color of state law and as policymaking authorities, maintained policies or customs of action and inaction resulting in harm to JANE DOE, with deliberate indifference or reckless disregard of rights protected by the Eighth and Fourteenth Amendments to the U.S. Constitution as well as California Constitution Article I, § 17 and California Civil Code § 52.4.

148.    Plaintiff JANE DOE was harmed by Defendants' actions and omissions and their conduct was a substantial factor in causing JANE DOE's harm

149.    RODRIGUEZ's actions constituted oppression, fraud and/or malice thereby

20

1  entitling Plaintiff to an award of exemplary and punitive damages according to proof.

2        150.    Defendants STATE OF CALIFORNIA and CDCR are vicariously liable, through

3  the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a) and 820(a), for

4  injuries proximately caused by the acts and omissions of their employees acting within the scope

5  of their employment.

6        151.    Plaintiff JANE DOE was injured as a direct and proximate result of Defendants'

7  actions and inactions, entitling her to receive compensatory and treble damages and civil penalties

8  against Defendants as allowed by law.

9        152.    Plaintiff JANE DOE is also entitled to an award of reasonable attorneys' fees and

10  costs pursuant to Civil Code Section 52.1 and as allowed by law.

11                                    **SIXTH CLAIM FOR RELIEF**

12                                      **"Sexual Assault and Battery"**

13                    **(California Common Law/Civ. Code § 1708.5)**

14                                *Against RODRIGUEZ*

15        153.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through

16  152, as though fully set forth herein.

17        154.    RODRIGUEZ acted with the intent to cause a harmful or offensive contact by

18  repeatedly sexually assaulting and raping JANE DOE while she was under his care, custody and

19  control as an inmate at CCWF.

20        155.    RODRIGUEZ caused an imminent fear of sexual assault and battery by repeatedly

21  summoning JANE DOE to BPH, even though there was no lawful or legitimate reason to be at

22  this location, and sexually offensive contact with JANE DOE resulted.

23        156.    JANE DOE did not consent to being touched by RODRIGUEZ did not consent to

24  being sexually assaulted and repeatedly raped while in custody by RODRIGUEZ.

25        157.    JANE DOE was harmed by RODRIGUEZ's conduct.

26        158.    As a direct and proximate result of said acts by Defendant RODRIGUEZ, JANE

27  DOE suffered injuries and damages as alleged herein and to which JANE DOE is entitled to

28  recover damages for past and future medical and psychological care, past and future pain and

1  suffering, and past and future mental and emotional distress.

2       159.    Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice

3  thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant

4  RODRIGUEZ according to proof.

5  **SEVENTH CLAIM FOR RELIEF**

6  **"Intentional Infliction of Emotional Distress"**

7  **(California State Common Law)**

8  *Against RODRIGUEZ, PALLARES and DOES 1 to 20*

9       160.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through

10  159, as though fully set forth herein.

11       161.    Defendant RODRIGUEZ engaged in extreme and outrageous conduct by

12  repeatedly subjecting JANE DOE to non-consensual sexual acts, which caused JANE DOE to

13  suffer severe mental and emotional distress.

14       162.    Defendant ACTING WARDEN MICHAEL PALLARES and Defendants DOES 1

15  to 20 engaged in extreme and outrageous conduct, including failing to protect JANE DOE and

16  other female inmates from RODRIGUEZ and acted with reckless disregard for the obvious

17  consequences of their actions.

18       163.    Defendant RODRIGUEZ, PALLARES and DOES 1 to 20 actions and inactions

19  constituted oppression, fraud and/or malice resulting in great harm and thereby entitling JANE

20  DOE to an award of punitive damages against all individually named Defendants.

21       164.    Plaintiff JANE DOE was injured as a direct and proximate result of Defendants

22  RODRIGUEZ, PALLARES and DOES 1 to 20 actions and inactions, entitling her to receive

23  compensatory damages for past and future medical and psychological care, past and future pain

24  and suffering, and past and future mental and emotional distress.

25  **EIGHTH CLAIM FOR RELIEF**

26  **"Negligence"**

27  **(California State Common Law)**

28  *Against RODRIGUEZ, PALLARES, FAVRE, ALLEN, VALLADARES, MOSQUEDA and DOES 1*

22

*to 20*

165.    Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 162, as though fully set forth herein.

166.    Defendant RODRIGUEZ, PALLARES, FAVRE, ALLEN, VALLADARES, MOSQUEDA and DOES 1 to 20 owed a duty to protect Plaintiff JANE DOE and breached that duty by allowing RODRIGUEZ to sexually assault and rape her on multiple occasions while housed at CCWF.

167.    Defendants PALLARES, FAVRE, ALLEN, VALLADARES, MOSQUEDA and Defendant DOES 1 to 20 failed to ensure Plaintiff was free from sexual violence caused by their subordinates and co-workers, including:

a.    by failing to report multiple instances of sexually harassing and abusive conduct by RODRIGUEZ towards female inmates at A Yard work exchange and BPH offices;

b.    by allowing and assigning RODRIGUEZ to work BPH at CCWF, after having received complaints from female inmates complaining of sexual misconduct by RODRIGUEZ, and knowing that the BPH office had no video surveillance;

c.    by the repeated failures of FAVRE, ALLEN, VALLADARES, MOSQUEDA and DOES 1 to 20 to report RODRIGUEZ for sexual abuse of inmates when each had seen RODRIGUEZ taking female inmates into the BPH for extended periods of time with no lawful or legitimate reason, and for not questioning why RODRIGUEZ was summoning female inmates to the BPH office with no penological justification; and,

d.    by granting RODRIGUEZ overtime shifts at BPH knowing female inmates had complained of sexual assault by RODRIGUEZ at that location and knowing there was no video monitoring in the BPH office.

168.    Plaintiff JANE DOE was injured as a direct and proximate result of Defendants' actions to which JANE DOE is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, and past and future mental and emotional distress.

### PRAYER FOR RELIEF

23

WHEREFORE, Plaintiff JANE DOE seeks judgment as follows:

1.      For an award of nominal, compensatory, general and special damages against Defendants according to proof at trial;

2.      For an award of exemplary/punitive damages against Defendants RODRIGUEZ, PALLARES, FAVRE, ALLEN, VALLADARES, MOSQUEDA and DOES 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional or statutory rights, and constituted oppression, fraud or malice resulting in great harm;

3.      For an award of actual damages, treble damages, civil penalties and any other available relief against Defendants as allowed by law;

4.      For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, Cal. Civ. Code § 52.1, Cal. Civ. Code § 52.4, Cal Code of Civ. Proc. § 1021.5, and any other statute that may be applicable; and

5.      For an award of any other relief, as the Court deems fair, just and equitable.

Dated: December 8, 2022                                 Respectfully Submitted,


                                                        By: /s/ Robert Chalfant
                                                        Robert Chalfant
                                                        Law Office of Robert Chalfant

                                                             Attorney for Plaintiff
                                                             JANE DOE




**JURY TRIAL DEMAND**

A JURY TRIAL IS DEMANDED on behalf of Plaintiff JANE DOE.

Dated: December 8, 2022                                 Respectfully Submitted,


                                                        By: /s/ Robert Chalfant
                                                        Robert Chalfant
                                                        Law Office of Robert Chalfant

Attorney for Plaintiff
JANE DOE